IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No:  18-cv-521 |
| LUCAS WILLIAMS, individually and as Personal Representative of the Estate of JESSICA WILLIAMS, and SAMANTHA UNSELL, as Special Administrator and /or Defendant Ad Litem of ROBERT WAYNE CASARES, deceased | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Travelers Property Casualty Company of America, by and through undersigned counsel, and filed this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment and other relief against Defendant Lucas Williams, individually, and as Personal Representative of the Estate of Jessica Williams and Defendant Samantha Unsell, as Special Administrator for Robert Wayne Casares, deceased.  In support of its Complaint for Declaratory Judgment, Plaintiff Travelers Property Casualty Company of America states as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory judgment by Travelers Property Casualty Company of America seeking a declaration pursuant to 28 U.S.C. § 2201 regarding insurance coverage sought by Defendant Samantha Unsell, as Special Administrator for Robert Wayne Casares, deceased, in connection with an underlying personal injury claim and lawsuit brought

against her by Defendant Lucas Williams, individually, and as Personal Representative of the Estate of Jessica Williams.

2.     Through this Complaint, Travelers Property Casualty Company of America requests that the Court issue a judgment declaring that the pertinent policies of insurance issued by Travelers Property Casualty Company of America to Tellabs, Inc., the employer of Robert Wayne Casares, do not provide insurance coverage in connection with claims brought by Defendant Lucas Williams, individually, and as Personal Representative of the Estate of Jessica Williams.

3.     This judgment is requested to determine an actual controversy between Travelers Property Casualty Company of America and Samantha Unsell, as Special Administrator for Robert Wayne Casares, deceased regarding the parties' rights and obligations under the subject insurance policies.  Defendant Lucas Williams, individually, and as Personal Representative of the Estate of Jessica Williams has been included in this action based on his status as an interested or necessary party in relation to the dispute concerning the subject insurance policies.

## THE PARTIES

4.     Plaintiff Travelers Property Casualty Company of America (hereinafter "Travelers") is a Connecticut corporation in good standing authorized to conduct business and issue insurance in the State of Illinois.  Travelers is a citizen of Connecticut for purposes of diversity jurisdiction because it is incorporated in Connecticut and its principal place of business is in Connecticut.

5.     Defendant Lucas Williams is an individual who resides in Old Town, Florida and who was a passenger and co-driving a tractor trailer through the State of Illinois on November 17, 2010.  He has filed a personal injury action for himself and wrongful death action on behalf

of his deceased wife Jessica Williams, also a resident of Old Town, Florida, in the Circuit Court of St. Clair County, Illinois stemming from the subject accident that occurred on November 17, 2010 in Clinton County, Illinois. Because the federal diversity statute treats the legal representative of an estate as a citizen of the same state as the decedent, Lucas William is a citizen of the State of Florida both in his individual capacity and in his capacity as the representative of the Estate of Jessica Williams. 28 U.S.C. § 1332(c)(2).

6.     Defendant Samantha Unsell, is sued in her capacity as Special Administrator for Robert Wayne Casares, deceased.  Robert Wayne Casares (hereinafter "Casares"), a resident of St. Louis, Missouri, is deceased from the subject accident that occurred in Clinton County, Illinois on November 17, 2010.   Because the federal diversity statute treats the legal representative of an estate as a citizen of the same state as the decedent, Samantha Unsell in her capacity as Special Administrator for the Estate of Robert Wayne Casares is a citizen of the State of Missouri. 28 U.S.C. § 1332(c)(2).

7.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy, including the combined cost of defense and alleged liability in the underlying case, exceeds the sum or value of $75,000.00, exclusive of interest and costs.  In addition, this action is brought pursuant to 28 U.S.C. § 2201.

8.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because events giving rise to the insurance coverage dispute took place in this District.

**THE POLICIES**

9.     Travelers issued a policy of commercial auto insurance to Tellabs, Inc. bearing Policy No. HJ-CAP-158D4318-TIL-10 (hereinafter "the Commercial Automobile Policy") for

3

the policy period April 15, 2010 to April 15, 2011.  A true and accurate copy of said policy is attached hereto as *Exhibit A*.

10.     Travelers issued a policy of general liability insurance to Tellabs, Inc. bearing Policy No. HJ – GLSA -158D4306 – TIL 10 (hereinafter "the General Liability Policy") for the policy period April 15, 2010 to April 15, 2011.  A true and accurate copy of said policy is attached hereto as *Exhibit B*.

11.     Travelers issued a policy of commercial excess liability (umbrella) insurance to Tellabs, Inc. bearing Policy No. HSMJ-CUP-158D432A-TIL-10 (hereinafter "the Excess Liability Policy") for the policy period April 15, 2010 to April 15, 2011.  A true and accurate copy of said policy is attached hereto as *Exhibit C*.

**THE UNDERLYING LITIGATION**

12.     Lucas Williams (hereinafter "Williams") individually and as Personal Representative of the Estate of Jessica Williams has filed a lawsuit (the "Underlying Lawsuit") against Casares claiming bodily injury and wrongful death arising out of a November 17, 2010 automobile accident on westbound Interstate 64 at or near mile marker 34 in the State of Illinois.

13.     The Underlying Lawsuit, captioned as *Lucas Williams, Individually and as Personal Representative of the Estate of Jessica Williams v. Samantha Unsell, as Special Representative and /or Defendant Ad Litem of Robert Wayne Casares, deceased*, is pending as Case No. 12 L 620 in the Circuit Court of St. Clair County, Illinois.  A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as *Exhibit D*.

14.     Williams alleges that Casares negligently drove his vehicle the wrong way on the highway while intoxicated and ran head-on into the Williams' vehicle causing injuries to Lucas Williams and the death of Jessica Williams.  *See Exhibit D*.

15.     In Count I of the Complaint filed in the Underlying Lawsuit, Williams asserts a claim for wrongful death against Mr. Casares in relation to the death of Jessica Williams as a result of the accident, alleging that Casares committed one or more of the following negligent acts:

(a)     failed to keep his vehicle in the proper lane of travel;

(b)     crossed the median of the highway; and

(c)     drove in the wrong direction in the plaintiff's lane of travel.

*See Exhibit D.*

16.     It is alleged that, as a result of this alleged negligence, the vehicle being driven by Casares struck the vehicle being operated by Jessica Williams, causing her death.  As a result, damages in excess of $50,000 are sought from Casares pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq.  *See Exhibit D.*

17.     In Count II of the Complaint filed in the Underlying Lawsuit,  states a survival action claim against Casares in relation to the injuries suffered Jessica Williams as a result of the accident, alleging that Casares committed one or more of the following negligent acts:

(a)     failed to keep his vehicle in the proper lane of travel;

(b)     crossed the median of the highway; and

(c)     drove in the wrong direction in the plaintiff's lane of travel.

*See Exhibit D.*

18.     It is alleged that, as a result of this alleged negligence, the vehicle being driven by Casares struck the vehicle being operated by Jessica Williams, allegedly causing her to suffer pain, suffering and mental anguish prior to her death.  As a result, damages in excess of $50,000 are sought from Casares pursuant to the Illinois Survival Act. *See Exhibit D.*

19.     In Count III of the Complaint filed in the Underlying Lawsuit, Williams states a claim for personal injury against Casares relating to injuries that Williams himself suffered as a result of the accident, alleging that he committed one or more of the following negligent acts:

(a)     failed to keep his vehicle in the proper lane of travel;

(b)     crossed the median of the highway; and

(c)     drove in the wrong direction in the plaintiff's lane of travel.

*See Exhibit D.*

20.     It is alleged that, as a result of this alleged negligence, the vehicle being driven by Casares struck the vehicle being operated by Jessica Williams in which Williams was a passenger, allegedly causing Williams to suffer injuries of a personal and pecuniary nature. Damages in excess of $50,000 are sought from Casares in relation to Mr. Williams' alleged injuries. *See Exhibit D.*

21.     There are no allegations in the Complaint filed against Ms. Unsell regarding any alleged involvement of Tellabs, Inc. in the circumstances leading to the accident at issue in the Underlying Lawsuit. *See Exhibit D.*

22.     There are no allegations in the Complaint filed against Ms. Unsell relating to or concerning Casares' employment with Tellabs, Inc. *See Exhibit D.*

23.     Williams also filed a separate lawsuit against Déjà vu Showgirls d/b/a Hustler Club and Tellabs, Inc., Case No. 11 L 641 in the Circuit Court of St. Clair County, Illinois (hereinafter the "Déjà vu Lawsuit"). *See Exhibit E.*

24.     In the Déjà vu Lawsuit, Williams alleged that Casares was acting in the scope and course of his employment for Tellabs, Inc. at the time of the accident on November 17, 2010 and Tellabs, Inc. was liable for Plaintiffs' damages through the alleged negligent acts of Casares. *See*

*Exhibit E*.

25.     The two cases were consolidated together on May 12, 2014.

26.     Tellabs, Inc. filed a Motion for Summary Judgment arguing that Casares was not acting in the course and scope of his employment at the time of the accident.  The Motion was granted by the Court on February 16, 2016.  *See Exhibit F*.

**TENDER OF DEFENSE**

27.     On April 25, 2017, Casares, by and through his attorney, sent a letter to Travelers requesting an indemnity and defense in the underlying litigation.

28.     Travelers has agreed to defend Casares with respect to the Underlying Lawsuit under a reservation of its rights.

**COUNT I**

**DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY CASARES UNDER THE COMMERCIAL AUTOMOBILE POLICY**

29.     Travelers incorporates Paragraphs 1 through 28 above as and for Paragraph 29 of Count I as though fully stated here.

30.     In addition to its other terms, conditions and exclusions, the Commercial Automobile Policy, specifically the Business Auto Coverage Form included therein, contains the following pertinent language (emphasis added):

> *Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.*
>
> *\*     \*     \**
> *SECTION II - LIABILITY COVERAGE*
>
> *A.     Coverage*
>
> *We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies,*

7

*caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".*

\*          \*          \*

*We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. ...*

1. *Who Is An Insured*

   *The following are "insureds":*

   a. *You for any covered "auto".*
   b. *Anyone else while using with your permission a covered "auto" you own, hire or borrow except:*
      (1) *The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.*

\*          \*          \*

*SECTION IV – BUSINESS AUTO CONDITIONS*

B. *General Conditions*

   \*          \*          \*

   5. *Other Insurance*

      a. *For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. ...*

      \*          \*          \*

      d. *When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.*

8

\*  \*  \*

SECTION V – DEFINITIONS

A. *"Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".*

B. *"Auto" means:*

 1. *A land motor vehicle, "trailer", or semitrailer designed for travel on public roads; or*

 2. *Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.*

C. *"Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.*

G. *"Insured" means any person or organization qualifying as an insured in the Who is An Insured provision of the applicable coverage. ...*

31. The Commercial Automobile Policy contains a Business Auto Extension Endorsement (Form CA T3 53 06 09) which contains the following pertinent language (emphasis added):

C. *EMPLOYEE HIRED AUTO*

 1. *The following is added to Paragraph A.1. Who is An Insured of Section II – LIABILITY COVERAGE:*

  *An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.*

\*  \*  \*

D. *EMPLOYEES AS INSURED*

 *The following is added to Paragraph A.1. Who is An Insured of Section II – LIABILITY COVERAGE:*

9

> *An "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.*

32.    The Commercial Automobile Policy contains an Employee Hired Autos Endorsement (Form CA 20 54 10 01) which contains the following pertinent language (emphasis added):

A.    *Changes in Liability Coverage*

   *The following is added to the Who Is An Insured Provision:*

   *An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.*

33.    The Named Insured under the General Liability Policy is Tellabs, Inc.  Casares is not listed as a Named Insured on the declarations page and, therefore, does not fall within the terms "you" and "your" for purposes of coverage as a Named Insured on the Commercial Automobile Policy.

34.    Furthermore, Casares does not qualify for coverage as an "insured" as such term is defined in the Commercial Automobile Policy through the language of the Who Is An Insured provision as stated in the Business Auto Coverage Form.  The vehicle operated by Casares at the time of the automobile collision in question was not owned, hired, or borrowed by the Named Insured (Tellabs, Inc.) and Casares was not operating the vehicle at the time of the collision in question with the permission of Tellabs, Inc. Rather, the vehicle was hired or rented by Casares and he was engaged in personal business at the time of the accident.

35.    Casares does not qualify for coverage as an employee of Tellabs, Inc. by means of the Business Auto Extension Endorsement or the Employee Hired Autos endorsement.

36.    Through those endorsements, language is added to the "Who is An Insured"

provision contained in the Business Auto Coverage Form in relation to coverage for Tellabs, Inc. employees when using a non-owned "auto" with the permission of Tellabs, Inc. while performing duties relating to the conduct of Tellabs, Inc.'s business.

37.     The "auto" being operated by Casares at the time of the accident at issue was rented under a contract or agreement in Casares' name.

38.     At the time of the accident in question, Casares was not operating the "auto" with the Tellabs, Inc.'s permission, nor was he operating the "auto" while performing duties related to the conduct of Tellabs, Inc. business.

39.     This has already been established by this Court as a matter of law by means of the ruling that granted Tellabs, Inc. summary judgment with respect to the claims asserted against it in the complaint filed in the Déjà vu Lawsuit on the grounds that Casares was not acting in the course and scope of his duties and was not performing work for Tellabs, Inc. at the time of the accident.

40.     Based on the consolidation of the Underlying Lawsuit with the Déjà vu Lawsuit, both Williams and Casares were a party to the action in which the Tellabs, Inc. summary judgment motion was decided and both parties participated in the briefing and argument on that motion. Therefore, they are bound by the Court's determination regarding the issues decided through the Tellabs, Inc. summary judgment motion and they are barred from relitigating that issue in relation to the claims stated against Casares.

41.     Though Casares was an employee of Tellabs, Inc., because he was not acting in the course of his employment for Tellabs, Inc., nor in anyway operating the "auto" for Tellabs, Inc. or in any manner related to the conduct of Tellabs, Inc.'s business at the time of the accident, Casares is not entitled to seek coverage as an insured under the Commercial Automobile Policy.

42.     Because Casares and thus, Ms. Unsell in her role as Special Administrator, are not

11

entitled to coverage as an "insured" under the Commercial Automobile Policy, that policy does not provide coverage for the claims stated in the Underlying Lawsuit.

WHEREFORE, Travelers requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against the Defendants declaring and awarding the following relief:

A.    Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Commercial Automobile Policy with respect to the claims asserted in the Underlying Lawsuit;

B.    Declaring that Travelers has no duty or obligation under the Commercial Automobile Policy to defend or indemnify Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares, deceased, with respect to the claims asserted against him in the Underlying Lawsuit or for any damages arising out of the November 17, 2010 accident;

C.    Declaring that Travelers has no duty or obligation to compensate Lucas Williams individually or as Personal Representative for the Estate of Jessica Williams for the alleged injuries resulting from the November 17, 2010 accident; and

D.    For such other declaratory relief as the Court deems appropriate.

## COUNT II

## DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY CASARES UNDER THE GENERAL LIABILITY POLICY

43.    Travelers incorporates Paragraphs 1 through 28 above as and for Paragraph 43 of Count II as though fully stated here.

44.    In addition to its other terms, conditions and exclusions, the General Liability Policy, contains the following pertinent language (emphasis added):

*Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy….*

*The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.*

       \*       \*       \*

*SECTION I – COVERAGES*
*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1.    *Insuring Agreement*

    a.   *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply*

       \*       \*       \*

2.    *Exclusions*

    g.   *Aircraft, Auto or Watercraft*

         *"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."*

       \*       \*       \*

*SECTION II – WHO IS AN INSURED*

       \*       \*       \*

2.    *Each of the following is also an insured:*

    a.   *Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or*

> *your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.*
>
> \*       \*       \*

45.     The Named Insured under the General Liability Policy is Tellabs, Inc.  Casares is not listed as a Named Insured on the declarations page and, therefore, does not fall within the terms "you" and "your" for purposes of coverage as a Named Insured on the General Liability Policy.

46.     Coverage for employees of Tellabs, Inc. under the General Liability Policy is only provided "for acts within the scope of their employment by [Tellabs, Inc.] or while performing duties related to the conduct of [Tellabs, Inc.] business."

47.     The "auto" being operated by Casares at the time of the accident at issue was rented under a contract or agreement in Casares' name.

48.     At the time of the accident in question, Casares was not operating the "auto" with the Tellabs, Inc.'s permission, nor was he operating the "auto" while performing duties related to the conduct of Tellabs, Inc. business.

49.     This has already been established by this Court as a matter of law by means of the ruling that granted Tellabs, Inc. summary judgment with respect to the claims asserted against it in the complaint filed in the Déjà vu Lawsuit on the grounds that Casares was not acting in the course and scope of his duties and was not performing work for Tellabs, Inc. at the time of the accident.

50.     Based on the consolidation of the Underlying Lawsuit with the Déjà vu Lawsuit, both Williams and Casares were a party to the action in which the Tellabs, Inc. summary judgment motion was decided and both parties participated in the briefing and argument on that motion. Therefore, they are bound by the Court's determination regarding the issues decided through the

Tellabs, Inc. summary judgment motion and they are barred from relitigating that issue in relation to the claims stated against Casares.

51.     Though Casares was an employee of Tellabs, Inc., because he was not acting in the course of his employment for Tellabs, Inc., nor in anyway operating the "auto" for Tellabs, Inc. or in any manner related to the conduct of Tellabs, Inc.'s business at the time of the accident, Casares is not entitled to seek coverage as an insured under the General Liability Policy.

52.     Even if Mr. Casares qualifies as an insured under the General Liability Policy, which is disputed, the General Liability Policy does not apply to the claims asserted against Casares for injuries arising from the use of an "auto" based on the application of exclusion g. contained in the policy:

g.     *Aircraft, Auto or Watercraft*

*"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."*

53.     Because Casares and thus, Ms. Unsell in her role as Special Administrator, are not entitled to coverage as an "insured" under the General Liability Policy, that policy does not provide coverage for the claims stated in the Underlying Lawsuit.

54.     Because the General Liability Policy does not apply to for injuries arising from the use of an "auto", that policy does not provide coverage for Casares or Ms. Unsell, in her role as Special Administrator, the claims stated in the Underlying Lawsuit.

WHEREFORE, Travelers requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against the Defendants declaring and awarding the following relief:

A.     Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the General Liability Policy with respect to the claims asserted in

the Underlying Lawsuit;

B.      Declaring that Travelers has no duty or obligation under the General Liability Policy to defend or indemnify Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares, deceased, with respect to the claims asserted against him in the Underlying Lawsuit or for any damages arising out of the November 17, 2010 accident;

C.      Declaring that Travelers has no duty or obligation under the General Liability Policy to compensate Lucas Williams individually or as Personal Representative for the Estate of Jessica Williams for the alleged injuries resulting from the November 17, 2010 accident; and

D.      For such other declaratory relief as the Court deems appropriate.

## COUNT III

## DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY CASARES UNDER THE EXCESS LIABILITY POLICY

55.     Travelers incorporates Paragraphs 1 through 28 above as and for Paragraph 55 of Count III as though fully stated here.

56.     In addition to its other terms, conditions and exclusions, the Excess Liability Policy, contains the following pertinent language (emphasis added):

*Throughout this insurance the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this insurance. ....*

*The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.*

*SECTION I - COVERAGES*

*Coverage A. Bodily Injury and Property Damage Liability; and Coverage B. Personal Injury And Advertising Injury Liability*

16

1. *Insuring Agreement*

   a. *We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally liable to pay as damages because of "bodily injury," or "property damage", "personal injury" or "advertising injury" to which this insurance applies.*

   \*      \*      \*

2. *Defense of Claims or Suits*

   a. *We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend.  If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.*
   b. *We will have the right and duty to defend any "suit" for damages which are payable under Coverages A or B (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance," or any other available insurance because:*

      *(1) Such damages are not covered; or*
      *(2) The "underlying insurance" has been exhausted by the payment of claims.*

   \*      \*      \*

*SECTION II – WHO IS AN INSURED*

\*      \*      \*

2. *Each of the following is also an insured:*

   a. *As respects the "auto hazard":*

      *(1)   Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it's with your permission; and*
      *(2)   Any of your executive officers, directors, partners, employees or stockholders, operating an "auto" you do not own, hire or borrow while it is being used in your business.*

   \*      \*      \*

   b. *Except as respects the "auto hazard":*

17

       (1)    *Your executive officers, employees, directors or stockholders while acting within the scope of their duties; and*

       \*      \*      \*

*SECTION V - DEFINITIONS*

\*      \*      \*

*3.    "Applicable underlying limit" means:*
*a.    If the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of:*
    *(1)    The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or*
    *(2)    The "retained limit" shown in the Declarations; or*
*b.    If the policies of "underlying insurance" do not apply to the "occurrence" or "offense", the amount stated in the Declarations as the "retained limit".*
*The limits of insurance in any policy of "underlying insurance" will apply even if:*
*(i)    The "underlying insurer" claims the insured failed to comply with any condition of the policy; or*
*(ii)    The "underlying insurer" becomes bankrupt or insolvent.*

\*      \*      \*

*5.    "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms, other than limits of insurance, of the auto policy of "underlying insurance".*

\*      \*      \*

*17.    "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:*
*a.    Any renewal or replacement of such policies; and*
*b.    Any other insurance available to the insured.*

\*      \*      \*

57.    The Excess Liability Policy contains an endorsement (Form UM 04 79 07 08)

which modifies the "Other Insurance" provision through the following pertinent language (emphasis added):

> 10.   OTHER INSURANCE
>
>> This insurance is excess over any valid and collectible other insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply excess of this insurance.
>>
>> As used anywhere in this policy, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:
>> (i)    Another insurance company;
>> (ii)   Us or any of our affiliated insurance companies, except when the Non cumulation of Each Occurrence Limit provision of Paragraph 5. of SECTION III — LIMITS OF INSURANCE or the Non cumulation of Personal and Advertising Injury Limit provision of Paragraph 4. of SECTION III — LIMITS OF INSURANCE applies;
>> (iii)  Any risk retention group;
>> (iv)   Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or
>> (v)    Any similar risk transfer or risk management method.
>>
>> As used anywhere in this policy, other insurer means a provider of other insurance.

58.   The Named Insured under the Excess Liability Policy is Tellabs, Inc.  Casares is not listed as a Named Insured on the declarations page and, therefore, does not fall within the terms "you" and "your" for purposes of coverage as a Named Insured on the Excess Liability Policy.

59.   Pursuant to the language of the Who Is An Insured provision, with respect to an "auto hazard", coverage may be afforded to anyone using an "auto" owned, hired or borrowed by Tellabs, Inc. provided it's with Tellabs, Inc.'s permission.  Coverage may also be provided to a Tellabs, Inc. employee with respect to an "auto" that was not owned, hired or borrowed by

Tellabs, Inc. while it is being used in Tellabs, Inc. business.

60.     As defined by the Excess Liability Policy, the term "auto hazard" means (in pertinent part) "bodily injury" for which coverage is afforded by the auto policy of "underlying insurance."

61.     As defined, "underlying insurance" means the policies listed in the Schedule of Underlying Insurance and any other insurance available to the insured. The General Liability Policy is the only policy listed on the Schedule of Underlying Insurance.  For the reasons stated herein, that policy does not apply to the claims stated in the Underlying Lawsuit.  While the Commercial Automobile Policy was also in effect on the date of loss, for the reasons stated herein, that policy also does not afford coverage for the claims stated in the Underlying Lawsuit.

62.     To the extent that there is no coverage for Casares under "any auto policy of 'underlying insurance'", the Underlying Lawsuit does not qualify as involving an "auto hazard" for purposes of the Excess Liability Policy and Casares does not qualify as an insured through the Who Is An Insured provision's coverage for employees in connection with a claim involving an "auto hazard."

63.     Even in the event that it is determined that the definition of "auto hazard" is met by the facts of this claim, Casares is not an insured under the Who Is An Insured because the "auto" operated by him at the time of the automobile collision in question was not owned, hired, or borrowed by Tellabs, Inc. and Casares was not operating the vehicle at the time of the collision in question with Tellabs, Inc.'s permission.

64.     Even in the event that it is determined that the definition of "auto hazard" is met by the facts of this claim, since Casares was not operating the vehicle in pursuit of Tellabs, Inc. business at the time of the accident, the extension of coverage for employees operating an "auto"

that was not owned, hired or borrowed by Tellabs, Inc. will not apply.

65.     Pursuant to the language of the Who Is An Insured provision, with respect to claims other than those that involve an "auto hazard," coverage may be provided to an employee of Tellabs, Inc. while acting in the scope of his or her duties.

66.     At the time of the accident in question, the "auto" was not being used by Casares in the pursuit of Tellabs, Inc.'s business.  Therefore, if this matter were found to arise from something other than an "auto hazard", Casares does not qualify as an insured through the Who Is An Insured provision's coverage for employees in connection with such other types of claims.

67.     It has already been established by this Court as a matter of law by means of the ruling that granted Tellabs, Inc. summary judgment with respect to the claims asserted against it in the complaint filed in the Déjà vu Lawsuit, that Casares was not acting in the course and scope of his duties and was not performing work for Tellabs, Inc. at the time of the accident.

68.     Based on the consolidation of the Underlying Lawsuit with the Déjà vu Lawsuit, both Williams and Casares were a party to the action in which the Tellabs, Inc. summary judgment motion was decided and both parties participated in the briefing and argument on that motion.  Therefore, they are bound by the Court's determination regarding the issues decided through the Tellabs, Inc. summary judgment motion and they are barred from relitigating that issue in relation to the claims stated against Casares.

69.     Though Casares was an employee of Tellabs, Inc., because he was not acting in the course of his employment for Tellabs, Inc., nor in anyway operating the "auto" for Tellabs, Inc. or in any manner related to the conduct of Tellabs, Inc.'s business at the time of the accident, Casares is not entitled to seek coverage as an insured under the Excess Liability Policy.

70.     Because Casares and thus, Ms. Unsell in her role as Special Administrator, are not

entitled to coverage as an "insured" under the Excess Liability Policy, that policy does not provide coverage for the claims stated in the Underlying Lawsuit.

WHEREFORE, Travelers requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against the Defendants declaring and awarding the following relief:

A.    Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Commercial Automobile Policy with respect to the claims asserted in the Underlying Lawsuit;

B.    Declaring that Travelers has no duty or obligation under the Excess Liability Policy to defend or indemnify Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares, deceased, with respect to the claims asserted against him in the Underlying Lawsuit or for any damages arising out of the November 17, 2010 accident;

C.    Declaring that Travelers has no duty or obligation under the Excess Liability Policy to compensate Lucas Williams individually or as Personal Representative for the Estate of Jessica Williams for the alleged injuries resulting from the November 17, 2010 accident; and

D.    For such other declaratory relief as the Court deems appropriate.

## COUNT IV

## DECLARATORY JUDGMENT – OTHER INSURANCE

71.    Travelers incorporates Paragraphs 1 through 28, Paragraphs 29 through 42, and Paragraphs 55 through 70 above as and for Paragraph 71 of Count IV as though fully stated here.

72.    Pleading in the alternative and without waiver of the positions stated above, in the event that it is determined that Travelers does owe an obligation under the Commercial Auto

Policy or the Excess Liability Policy to defend or indemnify Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares, deceased, with respect to the claims asserted against him in the Underlying Lawsuit or for any damages arising out of the November 17, 2010 accident, the coverage afforded may be affected by other insurance available to an insured in relation to the same claim.

73.    Pursuant to its terms, because the "auto" being driven by Casares at the time of the accident was not an "auto" owned by Tellabs, Inc., any coverage afforded by the Commercial Automobile Policy applies in excess of other collectible insurance.

74.    Pursuant to its terms, the Excess Liability Policy applies in excess of the "applicable underlying limit" and is also excess over any valid and collectible insurance available to Casares.

75.    Upon information and belief, Casares was insured under a personal automobile policy at the time of the accident and coverage under such insurance applies to the claims asserted in the Underlying Lawsuit.

76.    Therefore, to the extent that coverage under the Commercial Auto Policy or the Excess Liability Policy is owed to Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares, which is disputed for the reasons stated above, Travelers will have no coverage obligations until and unless such other coverage is exhausted by payment.

WHEREFORE, Travelers requests a judgment pursuant to 28 U.S.C. §§2201 and 2202 against the Defendants declaring and awarding the following relief:

A.    Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Commercial Automobile Policy and the Excess Liability Policy with respect to the claims asserted in the Underlying Lawsuit;

23

B.      Declaring that Travelers has no duty or obligation under the Commercial

Automobile Policy and the Excess Liability Policy to defend or indemnify

Casares or Samantha Unsell as Special Administrator for Robert Wayne Casares,

deceased, with respect to the claims asserted against him in the Underlying

Lawsuit or for any damages arising out of the November 17, 2010 accident;

C.      Declaring that Travelers has no duty or obligation under the Commercial

Automobile Policy and the Excess Liability Policy to compensate Lucas Williams

individually or as Personal Representative for the Estate of Jessica Williams for

the alleged injuries resulting from the November 17, 2010 accident; and

D.      For such other declaratory relief as the Court deems appropriate.


Dated:  March 1, 2018

Respectfully submitted,

By:            s/ Brian M. Reid                    _____

Attorney for Travelers Property Casualty
Company of America

Brian M. Reid, Esq. (IL Bar # 6216739)
LITCHFIELD CAVO LLP
303 W. Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6617
 (312) 781-6630 (Fax)
Email:  reid@litchfieldcavo.com